**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**FELTON ADAM ROBICHAUX, ET AL.**     **CIVIL ACTION NO. 22-CV-610**

**VERSUS**                            **JUDGE DARREL JAMES PAPILLION**

**HUNTINGTON INGALLS INC, ET AL.**    **MAGISTRATE JUDGE MICHAEL NORTH**

**ORDER AND REASONS**

Before the Court is a Motion for Partial Summary Judgment to Establish the Settlements of Certain Non-Parties filed by Defendant[1] Huntington Ingalls Incorporated ("Avondale"). R. Doc. 237. Plaintiffs Carolyn Robichaux, Tessa Robichaux, and Scott Robichaux ("Plaintiffs") oppose Avondale's motion. R. Doc. 278. For the reasons assigned below, Avondale's motion is **GRANTED**.

**BACKGROUND**

Mr. Felton Robichaux ("Robichaux") worked as an insulator and carpenter at Avondale Shipyard from 1961 to 1979, and alleges he was exposed to asbestos through his work, as well as through his contact with other employees at Avondale Shipyard. R. Doc. 101 at ¶¶ 13-15. In 1991, Robichaux and thousands of other plaintiffs sued a number of defendants for asbestos-related injuries in *In re Asbestos Plaintiffs v. Borden*, No. 91-18397, which was filed in Orleans Parish Civil District Court (the "*Borden* case"). Ultimately, Robichaux settled his claims against many of the defendants in the *Borden* case.

In January 2022, Robichaux was diagnosed with mesothelioma and soon after filed the instant action against Avondale and other defendants, claiming his mesothelioma was caused by exposure to asbestos while he was employed at Avondale. R. Doc. 1-2. Robichaux died in July

---

[1] Avondale is also party to this suit as a Third-Party Plaintiff and Cross Claimant.

2022, and Plaintiffs, Robichaux's heirs, joined this action in an Amended Complaint.  R. Doc. 101.

## LEGAL STANDARD

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*  In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E&P USA, Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).  The party seeking summary judgment has the initial burden of showing the absence of a genuine issue of material fact by pointing out the record contains no support for the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (quoting FED. R. CIV. P. 56(c)).  Thereafter, if the nonmovant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

## ANALYSIS

On May 25, 2023, Avondale filed this motion alleging some fifty-eight parties with whom Robichaux settled claims in the *Borden* case (the "Releasees") were released[2] not only from the *Borden* case, but also from all future claims for asbestos-related illness, including mesothelioma.

---

[2] These parties were released in a total of thirteen releases.

While Avondale does not claim Robichaux released it from liability in the *Borden* case, Avondale's goal in bringing this motion is to claim virile share credits for each party Robichaux released in *Borden*. Simply put, Avondale is entitled to a reduction in the judgment for each tortfeasor Avondale can show Robichaux released from mesothelioma claims *and* against whom Avondale can prove fault for the development of Robichaux's mesothelioma.[3]

In response, Plaintiffs argue Robichaux released only his claims for asbestosis in the *Borden* case, and the Releases do not serve as a basis for quantification of virile shares of fault for the mesothelioma claims in this case. Plaintiffs also argue the language of the release documents (the "Releases") is too broad and general to release claims for mesothelioma. Alternatively, Plaintiffs argue the Releases are impermissible summary judgment evidence because they are hearsay and unauthenticated, and Avondale's motion is premature because Avondale has not yet proven the Releasees were at fault for Robichaux's mesothelioma.

*A. Preliminary Arguments*

As an initial matter, the Court rejects Plaintiffs' arguments that Avondale's motion should be denied as premature. Avondale's motion is not premature. Avondale's motion seeks a partial summary judgment regarding "the existence and enforceability of prior releases executed by . . . Robichaux" and specifically does "*not* seek[] to establish the fault of any of the released parties through [its] motion." R. Doc. 311 at 1 (emphasis in original). There are, as explained above, two requirements for assigning a virile share to a released party, and it is not improper to find the Releases valid and admissible at this stage while leaving open the issue of whether Avondale can

---

[3] Plaintiffs' survival claims are governed by pre-comparative fault law which holds joint tortfeasors solidarily liable for Robichaux's injuries. *Gomez v. Aardvark Contractors, Inc.*, No. 18-CV-4186, 2020 WL 2473771, at *5 (E.D. La. May 13, 2020) (citing *Cole v. Celotex Corp.*, 599 So.2d 1058, 1068 (La. 1992)). "If a plaintiff settles with a joint tortfeasor, then the joint tortfeasor is released from paying contribution to the solidary obligor and the plaintiff's recovery against the solidary obligor is reduced by the settling joint tortfeasor's virile share." *Id.* (citing *Wall v. Am. Emp. Ins. Co.*, 386 So.2d 79, 82 (La. 1980)).

actually prove the fault of the subject Releasees at trial.  Avondale's motion is limited to a finding on the Releases and, therefore, is not premature.

The Court also rejects Plaintiffs' argument that the Releases are inadmissible.  Federal Rule of Evidence 901 articulates the standard for authentication of evidence in federal court.  Rule 901 requires proponents to "produce evidence sufficient to support a finding that the item is what the proponent claims it is," and may be satisfied by offering "[t]estimony that an item is what it is claimed to be."  FED. R. EVID. 901(a), (b)(1).  Avondale produced an affidavit from Richard Bradley Hiatt, an attorney at the law firm that is the legal successor to the firm that represented Robichaux in the *Borden* case, who certified the Releases are true and correct copies of the releases executed by Robichaux in the *Borden* case, and that the Releases were kept by the law firm in the regular course of business since the time Robichaux executed them.  R. Doc. 311-2.  Thus, the evidence has been authenticated, and because Avondale has produced sufficient, indeed unrebutted, evidence to show the records were kept in the ordinary course of business by the law firm that represented Robichaux in the *Borden* litigation, the releases survive hearsay scrutiny. FED. R. EVID. 803(6)(B).  Thus, the Court concludes the Releases are appropriate evidence for this Court to consider in deciding Avondale's motion.

*B.  Whether the Releases Release Future Mesothelioma Claims*

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."  LA. CIV. CODE art. 3071.  Louisiana law does not prohibit parties from settling future claims that may arise from a breach of duty.  *Brown v. Drillers, Inc.*, 630 So.2d 741, 754 (La. 1994); *see also Joseph v. Huntington Ingalls, Inc.*, 347 So.3d 579, 588 (La. 2020) ("[I]t is clear that the Civil Code articles on compromise permit parties to a compromise to settle any

4

difference they may have in the present or in the future that is the subject of a lawsuit or that could result in litigation."). A release will not be considered to release future claims, however, "if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise." *Savoie v. Huntington Ingalls, Inc.*, No. 15-CV-1220, 2019 WL 2423234, at *3 (E.D. La. June 10, 2019) (quoting *Brown,* 630 So.2d at 754). To determine the meaning and intent of parties to a written instrument, including a compromise or settlement, courts look to the four corners of the instrument. *Brown*, 630 So.2d at 749. The court may look beyond the four corners, however, when a party presents "substantiating evidence of mistaken intent." *Id.*

In *Hymel v. Eagle, Inc.*, the Louisiana Fourth Circuit Court of Appeal explained:

> Where a settlement and release refer expressly to the claim sought to be released by the party seeking to enforce the settlement, that alone is sufficient to shift the burden to the party seeking to oppose the enforcement of the settlement and release to prove that there was no meeting of the minds or that there was fraud or ill practices. It is not sufficient to raise the issue to merely make the self-serving allegation that there was no meeting of the minds. A party represented by counsel may not defeat a written settlement and release that is unambiguous on its face by merely alleging that he did not understand it. Otherwise, no settlement would be enforceable without more litigation which defeats the whole public policy favoring settlements. Signatures on documents are not mere ornaments . . . . There is little incentive to settle if a party to the settlement agreement may later seek to void it based merely on his self-serving statements, without more, in the absence of any evidence of fraud or ill practices, that he misunderstood what he signed or that he did not intend to sign what he signed.

7 So.3d 1249, 1257-58 (La. App. 4 Cir. 2009) (internal citations omitted).

At the outset, the Court rejects Plaintiffs' argument that the Releases do not release mesothelioma claims because they were signed before Robichaux contracted mesothelioma. Plaintiffs contend Robichaux's mesothelioma resulted from his exposure to asbestos – the same exposure that served as the basis for Robichaux's claims in the *Borden* litigation. Thus, Plaintiffs' mesothelioma claims were "future claims," which are releasable in Louisiana. *See Joseph*, 347 So.3d at 588. Accordingly, the relevant issue for this Court is whether, based on the language of

the *Borden* Releases, Robichaux released his future claims related to the development of mesothelioma.  Resolving this issue requires an individual analysis of each Release.  While the language of each Release varies slightly, the Releases can be separated into three general categories: those releasing future claims for (1) mesothelioma; (2) cancer; or (3) some variation of "any and all claims arising out of asbestos exposure."  The Court will consider each individual Release, separating the Releases by category.

      i.    *Releases Referencing Mesothelioma*

Six of the Releases include language releasing entities from future mesothelioma claims.

1. In the Amchem Products, Inc., et al Agreement, Robichaux released "any and all . . . claims . . . we now have, or may have in the future . . . for mesothelioma, cancer . . .". R. Doc.  237-4 at 4.

2. In the Metropolitan Life Insurance Company Agreement, Robichaux released "all asbestos-related claims which Plaintiffs may have at any time in the future" and noted he understood he "may be suffering from or, in the future, may suffer from asbestos-related diseases or injuries (such as cancer or mesothelioma) connected with the use of or exposure to various asbestos-containing material and products."  *Id.* at 11.

3. In the Champion International Corporation Agreement, Robichaux released "any claims . . . arising out of or related to . . . asbestos-related diseases and injuries and/or death" and noted he understood he "may be suffering from, or in the future, may suffer from asbestos-related diseases or injuries (such as cancer or mesothelioma)."  *Id.* at 15.

4. In the Garlock, et al. Release, Robichaux released "any and all causes of action . . . which Plaintiff now has or has ever had . . . upon or by reason or any of the facts alleged by Plaintiff in the Litigation, whether in contract or tort, property damages and any other damages, which have accrued or may ever accrue to Plaintiff or his heirs . . . relating to Plaintiff's alleged asbestos-related disease including but not limited to claims for his pleural disease, asbestosis, and any type of asbestos-related cancer and/or mesothelioma."  *Id.* at 23-24.

5. In the Fibreboard Corporation, et al. Agreement, Robichaux acknowledged he "understands that people exposed to asbestos may be subject to an increased risk of contracting cancer . . . including . . . mesothelioma" and released "all liability arising out of . . . any exposure or alleged exposure to asbestos," including "presently known Claims, but also . . . any and all Claims based upon . . . possible future development."  *Id.* at 30-31.

6. In the CBS Agreement, Robichaux released all claims, which was defined as "each and every claim . . . for the recovery of any 'Loss' . . . relating to or in anyway involving any 'exposures' and/or 'Disease' whether existing at any past date, now existing or accruing at any future date . . .".  R. Doc.  237-5 at 1-2.  The agreement defined "disease" as "each and every condition of the human body that causes physical or mental . . . damage, death, illness, . . . including but not limited to mesothelioma." *Id.* at 1.

These Releases clearly and unambiguously release Robichaux's future mesothelioma claims.  Not only do the Releases specifically release future claims, but they specify the future claims they are releasing include potential future mesothelioma claims.  By offering this specific language, Avondale meets its initial burden to show claims for mesothelioma are within the scope of the Releases.  Plaintiffs fail to present any summary judgment evidence showing Robichaux did not intend to release these claims.  Therefore, the Court concludes the language in these Releases is sufficient to release Plaintiffs' mesothelioma claims.

ii. *Releases Referencing Cancer*

Two of the Releases include language releasing entities from future cancer claims.

1. In the A.P. Green Industries, Inc. Agreement, Robichaux released "any and all rights, claims, demands, and causes of action of whatever kind or nature . . . which Releasors . . . now have or may have in the future for . . . cancer . . . which may be related to . . . Worker's inhalation or ingestion of asbestos fibers . . . or contact with, exposure to, or use of asbestos insulation products or other asbestos containing products."  R. Doc. 237-4 at 52.

2. In the A.W. Chesterton Company Agreement, Robichaux released "any liability . . . from any and all claims . . . whether presently existing or arising in the future, with respect to any and all disease or injuries presently existing or hereafter arising (including any asbestos related cancer), that were caused by or could be associated with exposure to Chesterton's asbestos-containing products."  *Id.* at 63.

Despite not specifically mentioning mesothelioma, these Releases release future claims for mesothelioma because they release claims for "cancer," and mesothelioma is a cancer.  The Releases' failure to specifically enumerate "mesothelioma" does not show Robichaux's intent to retain claims for mesothelioma.  As the Court noted in *Savoie v. Huntington Ingalls Incorporated*,

"while an average person would understand the meaning of the word 'cancer,' it is questionable whether he or she would comprehend a term like 'mesothelioma,'" and, "[t]hus, the fact that the [Release] does not mention mesothelioma does not distinguish it in a meaningful way from the release[s]" which do. 2019 WL 2423234, at *7. This Court similarly finds releases of "cancer" specifically and unequivocally release claims for mesothelioma, and because Plaintiffs have not offered any evidence to show Robichaux did not intend to release these claims, the Releases apply to Plaintiffs' mesothelioma claims.

    iii.    *Releases Referencing All Future Asbestos Claims*

    Six of the Releases include language releasing entities from all future asbestos claims.

1. In the Combustion Engineering, Inc. Agreement, Robichaux released "causes of action which [he] now has or may have in the future . . . for personal injuries, . . . wrongful death, or any other asbestos related disease or condition suffered . . . which may be related to, results from, or arise out of claimant's ingestion of asbestos fibers, or contact with . . . any products [from] Combustion Engineering."[4] R. Doc. 237-4 at 8.

2. In the UNR, et al. Release, Robichaux released "all claims of any nature allegedly resulting from any exposure to asbestos or asbestos-containing products manufactured distributed or sold by any Releasee whether such claims are present or future."[5] *Id.* at 21.

---

[4] Felton and Carolyn Robichaux executed a Receipt, Release and Indemnity Agreement, before a Notary Public, in March of 1999 in favor of Combustion Engineering, Inc. and its affiliated entities. R. Doc. 237-4 at 8-9. This Release released, among other things, "all claims, demands, damages, and causes of action which they now has [sic] or may have in the future," and included release of wrongful death claims and "any other occupational diseases which might be associated with the use of or contact with any products" of the released parties and "any other asbestos-related disease, symptom, or condition." *Id.* at 8. Paragraph 7 of the document provides, as follows:

> Appearers further state that it is their intention to release COMBUSTION ENGINEERING, INC., and its insurers from the date of the first contact of Claimant with any of its products, whatever that date may have been, through the date of any damages caused by its products, whatever that date may be. Appearers further declare that this release is signed by them after mature consideration and on the advice of their attorneys.

*Id.* On the record evidence in this case, it is impossible for this Court to interpret this agreement as anything other than a clear release of all claims against the released party, made on the advice of counsel, and given under oath before a Notary Public. It is without question, or serious debate, that by 1999 mesothelioma was known to be caused by exposure to asbestos. *See Migues v. Fibreboard Corp.*, 662 F.2d 1182, 1185 n.4 (5th Cir. 1981) (finding mesothelioma is an asbestos-related disease).

[5] On February 27, 1996, Felton and Carolyn Robichaux executed a release in favor of the UNR ASBESTOS-DISEASE CLAIMS TRUST. R. Doc. 237-4 at 21. The Release provides, in part:

3.  In the Babcock and Wilcox Agreement, Robichaux released "all . . . claims . . . [he] may now or may hereafter have arising out of or in any way related to the exposure of the undersigned, or either of them, to asbestos-containing products, manufactured, sold, distributed, or used by Babcock and Wilcox."[6] *Id.* at 41-42.

4.  In the Traveler's, et al. Release, Robichaux released "all claims, . . . manifested or unmanifested . . . arising from or relating to, in whole or in part, exposure to asbestos." *Id.* at 45.

5.  In the General Electric Company Release, Felton and Carolyn Robichaux released "liability for any and all claims . . . which [Plaintiffs] now possess or which they might in the future assert arising from Plaintiffs' alleged exposure to products or services allegedly manufactured, sold, distributed and/or provided by General Electric."[7] R. Doc. 237-4 at 59.

---

Releasor acknowledges that there is a risk that, subsequent to the execution of this Agreement, Releasor may discover, incur or suffer from claims, damages or injuries, which are unknown or unanticipated at the time this General Release and Settlement Agreement is executed. Such risk includes, without limitation, unknown or unanticipated claims, damages or injuries which arise from, are based upon or are related to the issue and matters raised by Releasor's claims against the Trust and which, if known by Releasor on the date this Agreement was executed, may have materially affected Releasor's decision to execute this General Release and Settlement Agreement. Releasor acknowledges that Releasor is assuming the risk of such unanticipated claims, damages or injuries and agrees that this General Release and Settlement Agreement applies thereto.

*Id.* at 22. Moreover, recognizing the principle that at a future trial the fault of the released parties would need to be proven for the share of the entities released in the UNR ASBESTOS-DISEASE CLAIMS TRUST release to be applied against Robichaux, the Release provides:

It is . . . understood and agreed that . . . in the event it is judicially determined that no Releasee is (i) a joint tortfeasor in any pending cause of action for asbestos-related injuries or (ii) otherwise responsible for the injuries sustained by Releasor in said cause of action, any damages recovered by Releasor shall not be reduced by the amount paid and to be paid in consideration under this General Release and Settlement Agreement.

*Id.*

[6] On December 7, 1991, Felton and Carolyn Robichaux executed the Babcock and Wilcox Release in front of a Notary Public. R. Doc. 237-4 at 41. The Release states Felton and Carolyn Robichaux "rel[ied] upon their own judgment and the judgment and advice of their own attorneys. [They] declared that the terms of [the] agreement have been read, or fully understood, voluntarily accepted and agreed to and approved by their attorney of record." R. Doc. 237-4 at 42. The Release was "approved" by a representative of the law firm that represented Robichaux. *Id.*

[7] On October 26th, 1999, Felton and Carolyn Robichaux signed the General Electric Company Release in front of a Notary Public, acknowledging they "recognize and understand that in executing this Release, . . . they are completely giving up, relinquishing, and discharging any and all rights, past, present, and future, . . . including the right to sue for future injuries, including, but not limited to, malignancies and death." R.Doc. 237-4 at 61. The Release also noted the Robichauxs were:

Desirous of accepting the consideration referred to herein in full settlement and discharge of all their legal rights arising out of or resulting from Plaintiff's claimed exposure to products and services

The language of these "all future asbestos claims" Releases is sufficient to release future mesothelioma claims.  Asbestos-caused mesothelioma is a claim relating to asbestos exposure, and releasing as Robichaux did, different variations of "future claims arising from asbestos exposure," Robichaux released future mesothelioma claims to the extent he did not reserve those claims in the Release documents.

The Court is aware of the Louisiana Fifth Circuit Court of Appeals' decision in *Breaux v. Mine Safety Appliances Co.*, 717 So.2d 1255 (La. App. 5 Cir. 1998), holding that a settlement agreement in earlier litigation arising out of the *Breaux* plaintiff's asbestosis diagnosis did not release his future mesothelioma claims.  In reaching its decision, the *Breaux* Court explained although the release in that case included language releasing claims for future disabilities arising from occupational diseases:

> It is not logical to expect that plaintiff intended to release defendant for the future manifestation of this type of cancer for $500.  This is a terrible disease.  If the agreement intended to include mesothelioma, defendant surely would have included it in the listed diseases.  As plaintiff argues, this settlement was a nuisance settlement.  Thus, we find the language of the agreement does not include the contraction of this type of cancer which would not manifest for many years, nor did plaintiff intend to include it in the settlement. Plaintiff signed the agreement expressly because he did not have any of the asbestos related diseases at the time.

*Id.* at 1257.

In this case, however, the settlement amounts are redacted, and Plaintiffs offer no evidence regarding the value of the Robichaux settlements in the *Borden* case. Accordingly, this Court is in

---

allegedly manufactured, sold, distributed, and/or provided by General Electric, and that the aforementioned consideration constitutes the full and complete settlement of any and all amounts that are or shall ever be due or owed to anyone as a direct or indirect result of the aforesaid exposure.

R. Doc. 237-4 at 61.  The Robichauxs also "acknowledge[d] that they have retained and/or consulted legal counsel in connection with the Action, that they have had the opportunity to freely consult with such counsel concerning this Release and understand[] the terms set forth herein."  *Id.*  Here, of course, the Release contains the term "malignancies," and based on this record the Court cannot find a basis to conclude mesothelioma was not released.

no position to determine whether the settlements relevant to Avondale's motion were "nuisance settlements." But, even assuming Robichaux's *Borden* settlements were "nuisance settlements," the Court would still find this to be an insufficient basis to conclude Robichaux did not legally release the Releasees from his mesothelioma claims. Settling future claims presents the potential for risk and benefit for both parties.[8] Robichaux ultimately contracted mesothelioma after settling his future claims and could possibly recover less at trial than if he had reserved those future claims. It was also possible, however, after settling his potential future mesothelioma claims, Robichaux might have not developed the disease. Had that been the case, Robichaux would have been compensated for claims that never arose.

This Court cannot, therefore, say in the absence of summary judgment evidence to the contrary, and none was presented in this case, that even a seemingly low settlement amount for a future claim would somehow indicate Robichaux, with advice of counsel, did not intend to release those future claims when the language of the Releases he signed contains language, written in plain English, setting forth that the Releases apply to *all future claims* for illnesses or diseases arising from asbestos exposure.[9] Indeed, this position is bolstered by the fact Robichaux signed releases

---

[8] Indeed, it is arguable that a "nuisance settlement," which suggests a claim is being settled because it lacks merit or strength, and money is being paid by a defendant to end litigation once and for all, is exactly the kind of settlement in which the parties intended to resolve once and for all "any and all claims." By agreeing to a "nuisance settlement," a plaintiff, of course, bears the risk that one day the "nuisance settlement" can amount to a "head" or "share" in a trial if fault is actually proven against the settling defendant. If the potential for such a factual finding is great, accepting a "nuisance settlement" is unwise, but if the risk is small, the risk might be justified, and it is not this Court's place to find the parties' motivations in the absence of clear evidence in the record.

[9] In *Hymel*, the Louisiana Fourth Circuit specifically noted the lawyers who represented Robichaux in the *Borden* case had "substantial experience in the field of asbestos." 7 So.3d at 1251. It is impossible for this Court to find, considering the plain language of the subject Releases, and the lack of summary judgment evidence to the contrary by Plaintiffs, that experienced asbestos lawyers did not understand the implication of releasing future claims arising from asbestos exposure, without reserving their clients' rights to bring future mesothelioma claims, when it was well known in 1991 when the *Borden* case was filed that mesothelioma was an asbestos-related cancer. *See generally Migues*, 662 F.2d at 1185 n.4.

in the *Borden* case specifically retaining some future claims.[10]   Legal documents have consequences, and our system of justice presupposes words in release documents, which are contracts, shall be given their plain and ordinary meaning.  *Dempster v. Lamorak Ins. Co.*, 2020 WL 5077244, at *13 (E.D. La. Aug. 26, 2020) (quoting *Hymel*, 7 So.3d at 1257-58) ("Signatures on documents are not mere ornaments.").

Accordingly, the Court finds on this particular summary judgment record, the "any and all claims arising out of asbestos exposure" Releases Robichaux executed in the *Borden* litigation released Plaintiffs' claims for mesothelioma in this litigation.  If fault is proven at trial against the *Borden* litigation Releasees, the Releasees' virile shares can be quantified to reduce the fault of other at-fault parties.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Avondale's Motion for Summary Judgment (R. Doc. 237) is **GRANTED**.

New Orleans, Louisiana, this 26th day of July, 2023.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[10] *See, e.g.,* R. Doc. 237-4 at 48 (the ACandS, Inc. Agreement); *Id.* at 50 (the Shook & Fletcher Insulation Co. Agreement).