### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**FELTON ROBICHAUX, ET AL.**                    **CIVIL ACTION NO: 22-CV-0610**

**VERSUS**                                                  **JUDGE DARREL JAMES PAPILLION**

**HUNTINGTON INGALLS INC., ET AL.**      **MAGISTRATE JUDGE MICHAEL NORTH**

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion for Summary Judgment filed by Defendant Huntington Ingalls Incorporated ("Defendant").[1]  R. Docs. 244.  Plaintiffs Carolyn Robichaux, Scott Robichaux, and Tessa Robichaux ("Plaintiffs") oppose Defendant's motion.  R. Docs. 265.  For the following reasons, Defendant's motion is **DENIED**.

### BACKGROUND

Mr. Felton Robichaux ("Robichaux") worked as an insulator and carpenter at Avondale Shipyard from 1961 to 1979 and as part of his job, worked with asbestos-containing products.  R. Doc. 101 at ¶ 13.  Plaintiffs allege Robichaux was also exposed to asbestos through his brother, Junior Robichaux ("Junior"), who worked at Avondale Shipyard from 1957 to 1961, and through Robichaux's contact with Avondale Shipyard coworkers with whom he rode a bus for laborers from Lafourche Parish to Avondale Shipyard each day.  *Id.* at ¶¶ 14-15.  In January 2022, Robichaux was diagnosed with mesothelioma, and soon after, Robichaux filed suit in Civil District Court for the Parish of Orleans against a number of defendants.  R. Doc. 1-2.  This suit was removed to this Court.  R. Docs. 1 and 1-2.  Robichaux died in July 2022, and Plaintiffs, as Robichaux's survivors, sought to be added as plaintiffs by filing an Amended Complaint.  R. Doc. 101.

---

[1] Avondale is also a third-party plaintiff and a cross plaintiff in this suit.

## LEGAL STANDARD

Summary judgment is appropriate when the evidence before the Court shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*  In evaluating a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E&P USA, Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (quoting FED. R. CIV. P. 56(c)).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

## ANALYSIS

Defendant's motion for partial summary judgment attacks only Plaintiffs' claim that Robichaux was exposed to asbestos through contact with Junior.  Defendant initially argues this

claim, typically referred to as a "take-home exposure claim," is improperly before the Court because Plaintiffs, in their Amended Complaint, allege only that Robichaux was exposed to asbestos from 1961 to 1979 and, thus, Plaintiffs have not plead a claim for exposure outside of this time period.  Defendant further argues even if the Court were to consider Plaintiffs' take-home exposure claim based on Robichaux's contact with Junior between 1957 to 1961, Plaintiffs fail to meet their burden to show Junior was exposed to asbestos and that Robichaux's exposure to Junior was a substantial factor in Robichaux's development of mesothelioma.

I.      *Whether Plaintiffs' Take-Home Exposure Claim Is Properly Before the Court*

        As an initial matter, the Court disagrees that Plaintiffs' Amended Complaint alleges Robichaux was exposed to asbestos only between 1961 to 1979.  The Federal Rules of Civil Procedure's pleading standards are liberal and require only "a short and plain statement of the claim to give the defendant fair notice of the claim and the grounds upon which it rests."  *Ross v. Ports Am. Gulfport, Inc.*, No. 19-CV-13929, 2020 WL 4698986, at *2 n.5 (E.D. La. Aug. 13, 2020) (citing FED. R. CIV. P. 8(a)(2)).  To be sure, Plaintiffs, in their Amended Complaint, allege Robichaux "was exposed to injurious levels of asbestos through his employment at Avondale Shipyards from 1961 to 1979."  R. Doc. 101 at ¶ 13.  Immediately following this allegation, however, Plaintiffs allege "[a]dditionally, [Robichaux's] brother, Junior Paul Robichaux worked at Avondale Shipyards during the relevant time frame . . . [and] was exposed to asbestos fibers/dust from his work at Avondale Shipyards . . . .  As a result, Junior Paul Robichaux carried home asbestos fibers which contacted [Robichaux] resulting in para-occupational/household asbestos exposures suffered by . . . Robichaux."  *Id.*  Defendant latches onto the phrase "relevant time frame" and argues it can only mean 1961 to 1979 because these are the only dates specifically alleged in the Amended Complaint.  Yet, Plaintiffs do not specifically refer to those particular

dates in the paragraph in which they allege take-home exposure, and "relevant time frame" could just as likely mean the relevant time frame Robichaux was exposed to the asbestos that allegedly caused his mesothelioma.  This reading is supported by the clear absence of any specific dates in the paragraph referencing the take-home exposure from Junior and his work clothing.[2]

The Court does not pretend to read Plaintiffs' Amended Complaint as clearly or obviously pleading the take-home exposure claim as occurring outside of the period between 1961 and 1979. Federal Rule of Civil Procedure 8, however, does not require pleadings to be clear or obvious.  It requires only that a pleading party provide "fair notice" of the claims against the responding party. After careful review of Plaintiffs' Amended Complaint, the Court concludes Plaintiffs provided such notice and, thus, Defendant is not entitled to summary judgment on Plaintiffs' take-home exposure claim on this basis.

## II.    Whether Plaintiffs' Take-Home Exposure Claim Survives Summary Judgment

Defendant also argues that, even if Plaintiffs' take-home exposure claim is properly before the Court, Plaintiffs fail to offer evidence to support their take-home exposure claim.  "Under Louisiana law, to prevail in an asbestos injury case, 'the claimant must show . . . he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury.'"  *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Vodanovich v. A.P. Green Indus., Inc.*, 869 So.2d 930, 934 (La. App. 4 Cir. 2004)) (internal quotations omitted). "To defeat an asbestos defendant's motion for summary judgment, which is the relevant motion here, the [Plaintiffs] need only show that a reasonable jury could conclude that it is more likely than not that [Robichaux] inhaled defendant's asbestos fibers, even if they were only 'slight'

---

[2] Notably, the only other paragraph using the phrase "relevant time[]" also does not list the years 1961 to 1979.  R. Doc. 101 at ¶ 31.

exposures." *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So.2d 1106, 1109 (La. App. 4 Cir. 1996)).

A.  *Significant Exposure*

Plaintiffs submit evidence sufficient to show Junior may have been significantly exposed to asbestos through his work at Avondale Shipyard.  Plaintiffs submit Junior's employment records showing he began working at Avondale Shipyard on August 22, 1957, as an insulation helper, and on May 18, 1959, was promoted to an insulator.  R. Doc. 265-12 at 67.  To support this employment history, Plaintiffs also offer deposition testimony from Robichaux confirming Junior worked as an insulator prior to 1961 when Robichaux began working at Avondale Shipyard.[3]  R. Doc. 265-2 at 13.  Plaintiffs submit ample testimony of the type of work insulators did with and around asbestos. For instance, Robichaux testified that, as an insulator, he cut asbestos-containing insulation and amosite blanket, and was responsible for insulating boilers and steam lines, and that Junior, as someone who worked in the same role, was responsible for the same work.  R. Doc. 265-2 at 9, 10 and 265-3 at 13.  Burnett Bordelon and Luther Dempster, insulation superintendents at Avondale Shipyard, confirmed asbestos-containing materials were frequently used by insulators during the time Junior worked at Avondale Shipyard.  Specifically, Mr. Bordelon testified insulators used asbestos cloth consisting of up to ninety percent asbestos, Johns Manville Thermobestos insulation, Kaylo pipe covering, Kaylo block insulation.  R. Doc. 265-13 at 25-26, 31.  Mr. Dempster testified the insulation department worked with products containing asbestos in the 1950s.  R. Docs. 265-13 at 29, 265-15 at 11, and 265-18 at 46.  This testimony is corroborated by Mr. Kenneth Garza, Dr. Steven Lacey, and Mr. James Shea, all certified industrial hygienists, who

---

[3] That Junior was an insulator helper and eventually an insulator is an important fact for purposes of this motion and is a fact that Defendant does not dispute.

all support Plaintiffs' claims that insulators in the 1950s performed work that significantly exposed them to asbestos.  R. Docs. 265-8 at 6, 265-21 at 25, and 265-28 at 14.

Plaintiffs also offer evidence showing insulators were exposed to dusty conditions and that asbestos dust settled on their clothing.  In his deposition testimony, Robichaux noted that cutting insulation was "dusty work."  R. Doc. 265-2 at 9, 10.  Mr. Dempster confirmed that members of insulation crews "were heavily exposed on a daily basis to inhalation of asbestos fibers," and testified that there was "asbestos all over in our shop and nobody wore disposable clothing."  R. Docs. 265-18 at 3 and 265-20 at 26.  Mr. Dempster also noted that the insulation shop "was never vacuumed or blowed [sic] out," and that "you couldn't walk back there without getting asbestos on your clothes."  R. Doc. 265-20 at 30-31, 45-46.  Mr. Dempster also testified that Avondale Shipyard employees worked with asbestos dust by throwing it "in the trash bin with the rest of the dust" and ultimately disposing of it in the river.  *Id.*  The testimony from witnesses regarding the volume of asbestos insulators worked with, the amount of dust that worked caused, and as well as the uncontroverted evidence Junior worked as an insulator at Avondale Shipyard creates a genuine issue of material fact as to whether Junior was exposed to asbestos during his employment at Avondale Shipyard.

Finally, Plaintiffs submit evidence indicating Robichaux may have suffered take-home asbestos exposure as a result of Junior's exposure at Avondale Shipyard.  Robichaux testified that when Junior worked at Avondale Shipyard, he would visit his brother at his home, often weekly, and during these visits, Junior wore his work clothes.  R. Doc. 265-4 at 7, 40 and 265-6.  Robichaux claimed he would visit his brother "a lot—sometimes 2, 3, or 4 times in a week" and the visits would last anywhere from twenty minutes to four hours.  *Id.*  Mrs. Carolyn Robichaux, Robichaux's widow, also testified when she and Robichaux began dating, they would visit Junior's

6

home, often visiting for thirty minutes to an hour, and during these visits, Junior would embrace and shake hands with Robichaux. R. Doc. 265-7 at 12. Mrs. Robichaux also testified that Junior was wearing work clothes during these visits. *Id.* Avondale argues "[t]he 'take home' allegations from Junior Robichaux's clothing are a far cry from the typical take home asbestos exposure allegations" where the plaintiff is exposed to asbestos through shaking out laundry. R. Doc. 244-2 at 13-14. Plaintiffs submit expert testimony, however, showing these exposures nonetheless may have substantially exposed Robichaux to asbestos. Mr. Kenneth Garza, Plaintiffs' certified industrial hygienist, concluded that the type of work Junior did would have allowed for take-home exposure from his work clothing. R. Doc. 265-8 at 7. Mr. Garza explained Robichaux "would visit [Junior's] home and visit with family, things like that, and so there's that opportunity for that para-occupational exposure in that regard." R. Doc. 265-8 at 7. This opinion is corroborated by Dr. Steven Lacey, the expert certified industrial hygienist of now-dismissed defendant Hopeman Brothers Incorporated, who concluded "Robichaux first encountered asbestos as a young person from take-home exposures from the contaminated clothing of his brother, . . . which more than likely increased his risk for disease." R. Doc. 265-21 at 25. Given this evidence, the Court finds "a reasonable jury could conclude that it is more likely than not that [Robichaux] inhaled defendant's asbestos fibers, even if they were only 'slight' exposures," and, as a result, have met the burden necessary to survive summary judgment. *Williams*, 23 F.4th at 512 (internal citations omitted).

## B.  *Substantial Factor In Causing Injury*

Plaintiffs offer evidence showing Robichaux's contact with Junior and Junior's work clothing may have been a substantial factor in his development of mesothelioma. Specifically, Mr. Garza answered affirmatively when asked "whether any para-occupational asbestos exposure

suffered by . . . Robichaux would have increased his risk for developing an asbestos-related disease[.]" R. Doc. 265-8 at 7. Mr. Garza and Plaintiffs' expert pathologist, Dr. Brent Staggs, M.D., both swore in affidavits that, in their opinions, it is "more probable than not, that during . . . 1957 to 1961, Felton Robichaux sustained 'take home' asbestos exposures that resulted from his brother Junior Robichaux's work as an insulator at Avondale Shipyards," and that such exposure was "a substantial contributing factor and a medical cause of [Robichaux's] mesothelioma." R. Doc. 265-9 at ¶¶ 4, 5 and 265-10 at ¶¶ 4, 5. Furthermore, as noted above, Hopeman Brothers' expert witness, Dr. Steven Lacey, concluded "Robichaux first encountered asbestos as a young person from take-home exposures from the contaminated clothing of his brother, . . . which more than likely increased his risk for disease." R. Doc. 265-21 at 25. Accordingly, Plaintiffs have submitted summary judgment evidence that raises a genuine issue of material fact as to whether Robichaux's take-home exposure through Junior was a substantial factor in his development of mesothelioma.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Record Document 244) is **DENIED**.

New Orleans, Louisiana, this 25th day of September 2023.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**